(Not for publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MODERN TECHNOLOGIES GROUP, INC., | : | |
| Plaintiff, | : | Civil No. 05-5919 (RBK) |
| v. | : | **OPINION** |
| CARL BERGMAN, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

Presently before the Court is a motion by defendant Carl Bergeman ("Defendant"), incorrectly identified in the caption as Carl Bergman, seeking dismissal of the Amended Complaint filed by plaintiff Modern Technology Group, Inc. ("Plaintiff"). Defendant claims that dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(5) for Plaintiff's failure to properly serve Defendant and pursuant to Fed. R. Civ. P. 12(b)(2) as this Court lacks personal jurisdiction over Defendant.

**I. BACKGROUND**

Plaintiff, a New Jersey corporation, filed its Complaint with this Court on December 22, 2005, accusing Defendant, a citizen and resident of California, of fraud and breach of contract. A

1

summons was issued for Defendant on December 29, 2005. On January 23, 2006, this Court ordered Plaintiff to amend its Complaint so as to cure a jurisdictional deficiency, as Plaintiff had failed to state its singular principal place of business. Plaintiffs did so by way of filing an Amended Complaint on February 6, 2006.

Defendant failed to file an answer or responsive pleading, and default was entered against him on March 23, 2006. Plaintiff subsequently moved for default judgment. On April 5, 2006, this Court issued a Consent Order, vacating the entry of default and withdrawing Plaintiff's motion for default judgment.

On April 10, 2006, Defendant filed this motion to dismiss.

## II. DISCUSSION

### A. Improper Service of Process

#### 1. Standard

In order for this Court to exercise personal jurisdiction over a defendant, that defendant must have been properly served with a summons and a copy of the Complaint. Lampe v. Xouth, Inc., 952 F.2d 697, 700-01 (3d Cir. 1991). The Third Circuit has held that "the party asserting the validity of service bears the burden of proof on that issue." Grand Entertainment Group v. Star Media Sales, 988 F.2d 476, 488 (3d Cir. 1993).

The requirements for proper service are set forth in Fed. R. Civ. P. 4, which states that:

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:

(1) pursuant to the law of the state in which the district court is located, or in which

2

> service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Therefore, service in this matter must be effected by either the standards set forth in Rule 4(e)(2) or those contained in the Court Rules for the State of New Jersey. Under N.J. Ct. R. 4:4-4, service can be obtained in a manner similar to that contained in Fed. R. Civ. P. 4(e)(2). Additionally, service can be obtained by registered or certified mail, return receipt requested, conditional on the serving party submitting an affidavit, satisfying the requirements of N.J. Ct. R. 4:4-5(c)(2) and stating that service by mail is the only means by which service can be effected.

    2.    <u>Analysis</u>

In this matter, Plaintiffs enlisted the services of a process server named Barbara Tustison ("Tustison") to properly serve Defendant. According to the Affidavit of Process Server filed by Plaintiff with this Court, Tustison served process upon a woman named Ricarda Gonzales ("Gonzales") at Defendant's residence on February 21, 2006. After having done so, Tustison then mailed a copy of the documents via first class mail.[1] In a Declaration of Due Diligence (Pl.'s Br. Tustison Aff. Ex. B), Tustison claims to have received the summons and Complaint on January 6, 2006. Beginning on January 15, 2006, Tustison attempted to effect service, but stated that there was no answer at Defendant's residence on at least ten separate occasions. On

---

[1] This mailing was not in conformance with the requirements of N.J. Ct. R. 4:4-4 and N.J. Ct. R. 4:4-5(c)(2), and therefore cannot be considered to be proper service upon Defendant.

February 21, 2006, Tustison acknowledges serving the documents upon Gonzales, who told Tustison that she was employed by Defendant as his maid.

      As is stated above, for service at a defendant's residence to be effective, the person served must be either the defendant or someone "residing therein."  Generally, courts have held that housekeepers who do not live with a defendant can not accept service on his behalf.  See Polo Fashions, Inc. v. B. Bowman & Co., 102 F.R.D. 905 (S.D.N.Y. 1984) (holding that service upon a housekeeper who did not reside with the defendant was insufficient to constitute service upon the defendant); Franklin America, Inc. v. Franklin Cast Products, Inc., 94 F.R.D. 645 (E.D. Mich. 1982) (holding that a part-time housekeeper does not "reside" in a defendant's home and therefore cannot accept service).  In contrast, when considering cases involving "live-in" housekeepers, courts have held that they are considered to "reside" with defendants.  See Reynolds Corp. v. Nat'l Operators Servs., Inc., 208 F.R.D. 50 (W.D.N.Y. 2002); Barclays Bank of New York v. Goldman, 517 F. Supp. 403 (S.D.N.Y. 1981).

      In this case, Defendant has asserted that he knows a woman named "Ricarda" who has been sent to his house by a housekeeping service (Def.'s Br. Bergeman Aff. ¶ 7); presumably, this is the same woman who was served with process by Tustison.  Furthermore, Defendant asserts that no woman named Ricarda Gonzales has ever lived or resided at his residence.  (Id. at ¶ 6.)  Defendant further asserts that Gonzales, to his knowledge, does not speak or understand English (Id. at ¶ 7.)  Plaintiffs argue that Gonzales does speak English, as Tustison claims to have conversed in English with Gonzales when she served process.  (Pl.'s Br. Tustison Aff. ¶ 4.)  However, Plaintiffs at no point dispute the contention that Gonzales was a housekeeper who did not live at Defendant's residence.  Defendants further claim that as Tustison's Declaration of Due

4

Diligence shows her to have received the papers on January 6, 2006, and the Amended Complaint was not filed until February 6, 2006, Tustison must have served Gonzales with the initial – and superceded – Complaint, thereby rendering service insufficient.

This Court finds that service upon Defendant's housekeeper was insufficient to constitute service upon Defendant. Plaintiff dedicates a good portion of its brief arguing that defense counsel made gestures indicating that Defendant had been properly served and that he was aware of the Complaint filed against him. Such contentions are irrelevant. The Third Circuit has clearly stated that "[a]lthough notice underpins Federal Rule of Civil Procedure 4 concerning service, notice cannot by itself validate an otherwise defective service. Proper service is still a prerequisite to personal jurisdiction." Grand Entertainment Group, 988 F.2d at 492. Therefore, whether Defendant had notice of the action is immaterial; a lack of proper service upon him renders this Court unable to exercise personal jurisdiction over Defendant.

Defendant argues that since service upon him was never realized, this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5). However, in Umbenhauer v. Woog, 969 F.2d 25 (3d Cir. 1992), the Third Circuit held that when service is improper, dismissal is often not the appropriate remedy:

> Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process. However, dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service.

Id. at 30. In this case, this Court finds no reason to think that Plaintiff will be unable to properly serve Defendant; certainly, a "reasonable prospect" exists that proper service can be

accomplished.  Accordingly, this Court finds dismissal to be improper; rather, this Court will order service upon Defendant to be quashed and order Plaintiff to properly serve Defendant within thirty (30) days of the date of this Opinion and Order, under pain of dismissal.  Until such service is accomplished, this Court cannot exercise jurisdiction over Defendant.

  B. Lack of Personal Jurisdiction

    1. Standard

Defendant further argues that notwithstanding Plaintiff's failure to properly serve Defendant with process, this Court cannot maintain personal jurisdiction over him, as he lacks sufficient contacts with the State of New Jersey.  Determining whether a court can exercise personal jurisdiction in a diversity case involves a two-step analysis.  First, a court must determined whether the state long-arm statute authorizes jurisdiction over a non-resident party, and second, a court must determine whether the exercise of jurisdiction is consistent with due process.  IMO Indus. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998).  In New Jersey, the "long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution.  Therefore, the question of whether this Court has jurisdiction over the defendant is determined by federal constitutional law." Decker v. Circus Circus Hotel, 49 F. Supp. 2d 743, 745 (D.N.J. 1999) (citations omitted).  The general constitutional standard for the exercise of personal jurisdiction was established by the Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945).  In International Shoe, the Court explained that, to exercise jurisdiction over a nonresident party not present in the forum jurisdiction, that party must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

International Shoe, 326 U.S. at 316.

Determining whether the defendant's contacts with the forum state are sufficient for the Court to exercise jurisdiction over him depends first on whether the Court seeks to exercise specific or general jurisdiction. When the defendant's contacts with the forum arise from the transaction or occurrence at issue in the action before the Court, the Court exercises specific personal jurisdiction over the defendant. To do so, the Court must find that the "non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Alternatively, when the defendant's contacts with the forum arise from instances outside the scope of the instant action, the Court could exercise general personal jurisdiction. The Court can exercise general jurisdiction over a defendant if the defendant is found to have "continuous and systematic contacts with the forum state." General Elec., 270 F.3d at 150.

  2. Analysis

In this case, Plaintiff contends that this Court's jurisdiction over Defendant is specific to the occurrences giving rise to this action. Plaintiff alleges that "Defendant committed fraud against Plaintiff through his sham corporation," (Pl.'s Br. at 9), and that this scheme gave Defendant sufficient contacts with New Jersey for this Court to exercise personal jurisdiction over him. Plaintiffs contend that although these contacts were made through the corporation Big Toys Coachworks, Inc. ("BTCI"), such contacts should be imputed to Defendant, as BTCI served as an alter ego for Defendant.

If Plaintiff can successfully establish that Defendant is liable as the alter ego of BTCI,

then this Court can impart its personal jurisdiction over BTCI upon Defendant.  See Minerva Marine, Inc. v. Spiliotes, 2006 U.S. Dist. LEXIS 13939, at *11 (D.N.J. Mar. 13, 2006) ("It is settled that if an individual is determined to be the alter ego of a corporate defendant, and the corporate defendant is subject to a forum's jurisdiction, then the individual will also be subject to the forum's jurisdiction.") (citing Hudson County Carpenters v. V.S.R. Construction Corp., 127 F. Supp. 2d 565 (D.N.J. 2000)).  As BTCI engaged in repeated transactions in New Jersey, Defendant appears to concede that this Court can establish personal jurisdiction over BTCI. Plaintiff alleges that Defendant was the principal owner of this business.  Defendant does not contend that BTCI lacked sufficient contacts with New Jersey; rather, he claims that since BTCI is not his alter ego, while this Court can exercise jurisdiction over BTCI, it cannot exercise jurisdiction over Defendant. Therefore, whether this Court can exercise specific jurisdiction over Defendant is a function of whether Defendant is considered to be the alter ego for BTCI.

Defendant claims that Plaintiffs have not sufficiently plead the necessary facts to show alter ego liability.  When a defendant challenges the Court's personal jurisdiction over him, "the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" Mellon Bank PSFS v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat'l Bank v. Calif. Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987)).  Defendant claims that Plaintiff has failed to sufficiently allege such contacts, and has instead plead only "conclusory allegations."  (Def.'s Br. at 8).

In its Amended Complaint, Plaintiff alleged that:

8

> 35. At this time, and all relevant times hereto, BTCI was a mere instrumentality or alter ego of Bergman and had no separate existence but was a mere conduit for Bergman's activities.
>
> 36. Additionally, and as set forth herein, Bergman abused the business form of BTCI to perpetrate a fraud and injustice against [Plaintiff] and to otherwise circumvent the law.

(Compl. ¶¶ 35-36.)

Plaintiff and Defendant agree that this Court should look to New Jersey law for "piercing the corporate veil," the doctrine by which the corporate framework can be disregarded and liability can be imposed on an individual (Pl.'s Br. at 11; Def.'s Br. at 8.) In <u>D.R. Horton, Inc. v. Dynastar Development, L.L.C.</u>, 2005 WL 1939778 (N.J. Super. Ct. Law Div. Aug. 10, 2005), a New Jersey court noted the state's two-part test for piercing a corporation's veil:

> First, the plaintiff must prove that the subsidiary was a mere instrumentality or alter ego of its owner. That is, that the parent or owner so dominated the subsidiary that it had no separate existence but "was merely a conduit for the parent."
>
> Second, the plaintiff must prove that the parent or owner has abused the business form to perpetrate a fraud, injustice, or otherwise circumvent the law. "Even in the presence of dominance and control, liability will be imposed only where the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law."

<u>Id.</u> at *27 (quoting <u>State Dep't of Environ. Prot. v. Ventron Corp.</u>, 94 N.J. 473, 500-01, 468 A.2d 150 (1983)). Furthermore, the Third Circuit has fashioned a "Federal rule," which has been applied by judges in this District, for determining whether a corporation was functioning as an alter ego. See <u>Avatar Business Connection, Inc. v. Uni-Marts, Inc.</u>, 2005 U.S. Dist. LEXIS 37506, at *34 (D.N.J. Dec. 29, 2005) (citing <u>U.S. v. Pisani</u>, 646 F.2d 83, 88 (3d Cir. 1981)).

In its Amended Complaint, Plaintiff alleges that Defendant acted in a fashion that meets the test used by New Jersey courts when determining whether to pierce the corporate veil. Given

9

...
...
...

that this case remains at a pre-discovery stage, requiring more robust allegations from Plaintiff would be imprudent.  Once discovery progresses, and this Court can weigh whether Defendant was an alter ego for BTCI, Defendant is free to raise this issue again.  At that time, this Court will be able to consider whether it has personal jurisdiction over Defendant.  At the present time, however, this Court is unable to do so.  Given that Plaintiff, in its Amended Complaint, alleged that Defendant was an alter ego for BTCI, and alleged those factors necessary for piercing the corporate veil, this Court will deny without prejudice Defendant's motion to dismiss this case for a lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

### III. CONCLUSION

For the foregoing reasons, this Court will deny without prejudice Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(5).  Finding that Defendant was not properly served with process, this Court will quash service upon Defendant and order Plaintiff to properly serve Defendant within thirty (30) days of today's date.  The accompanying Order shall issue today.


Dated: <u>October 4, 2006</u>                             s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge