(Not for publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
MODERN TECHNOLOGIES                 :
GROUP, INC.,                        :
                                    :
            Plaintiff,              :     Civil No. 05-5919 (RBK)
                                    :
      v.                            :     **OPINION**
                                    :
CARL BERGMAN,                       :
                                    :
            Defendant.              :
_____ :

**KUGLER**, United States District Judge:

Presently before the Court is a motion by plaintiff Modern Technologies Group, Inc. ("Plaintiff"), seeking default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against defendant Carl Bergeman ("Defendant"), incorrectly identified in the caption as Carl Bergman. For the reasons set forth below, this Court will grant Plaintiff's motion.

I.      BACKGROUND

Plaintiff, a New Jersey corporation, filed its Complaint with this Court on December 22, 2005, accusing Defendant, a citizen and resident of California, of fraud and breach of contract. On January 23, 2006, this Court ordered Plaintiff to amend its Complaint so as to cure a jurisdictional deficiency, as Plaintiff had failed to state its singular principal place of business.

1

Plaintiffs did so by way of filing an Amended Complaint on February 6, 2006.

In the Amended Complaint, Plaintiff asserts that Defendant was and/or is the principal owner and operator of a business named Big Toys Coachworks, Inc. ("BTCI").  Plaintiff claims that during the years 2003 and 2004, BTCI ordered products from Plaintiff, purchased advertising space in Plaintiff's publication, and purchased floor space at Plaintiff's trade shows.  Plaintiff asserts that BTCI sent Plaintiff numerous checks to pay for these expenses that were drawn on an account with insufficient funds.  Plaintiff claims that in October of 2004, Defendant personally guaranteed the debt, and that in July of 2005 Defendant asked for additional time to satisfy the debt.  Defendant gave personal property and at one point the assignment of proceeds from a lawsuit to Plaintiff's representative in exchange for Plaintiff agreeing to not file suit against BTCI.  Plaintiff asserts that at the time this action was commenced, neither Defendant nor BTCI had paid any portion of the debt owed to Plaintiff.  In the Amended Complaint, Plaintiff seeks judgment against Defendant for fraud and breach of contract.  Plaintiff states that "BTCI was a mere instrumentality or alter ego of [Defendant]" and that Defendant "abused the business form of BTCI to perpetuate a fraud or injustice against [Plaintiff]" (Compl. ¶¶ 35-36.)  Plaintiff further asserts that Defendant personally guaranteed the contract between BTCI and Plaintiff and that in exchange for Defendant's personal assumption of the debt, Plaintiff forbeared on its initial right to initiate legal action against either BTCI or Defendant.

Defendant failed to file an answer or responsive pleading, and default was entered against him on March 23, 2006.  Plaintiff subsequently moved for default judgment.  On April 5, 2006, this Court issued a Consent Order, vacating the entry of default and withdrawing Plaintiff's motion for default judgment.

On April 10, 2006, Defendant filed a motion to dismiss for lack of personal jurisdiction and insufficient service of process. On October 4, 2006, this Court denied Defendant's motion without prejudice and quashed service upon Defendant, ordering Plaintiff to properly serve Defendant within 30 days of the date of the Order. Plaintiff effected service upon Defendant on October 11, 2006. On October 26, 2006, Plaintiff requested that default be entered against Defendant, which occurred the next day.

On October 27, 2006, Plaintiff moved for default judgment against Defendant. On February 8, 2007, this Court denied Plaintiff's motion without prejudice, stating that Plaintiff had failed to submit an affidavit or otherwise verify the damages it claimed, and had further failed to address the issues of whether default judgment should be entered in this matter. On February 16, 2007, Plaintiff filed a second motion for default judgment, which is presently before this Court. Defendant has not filed a brief opposing the present motion.

## II.  STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir.

1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at *1 (citing Wright, Miller, & Kane, § 2688, at 63); Directv, Inc. v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004)).

**III.   ANALYSIS**

    A.   <u>Cause of Action</u>

As stated above, before awarding a default judgment, the Court must determine whether the moving party's complaint establishes a legitimate cause of action. In this matter, Plaintiff alleges causes of action for fraud and breach of contract.

In New Jersey, "[t]he five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). In its Amended Complaint, Plaintiff asserts that Defendant asserted that the debts would be paid in full, despite knowing this to not be true. Plaintiff asserts that it reasonably

relied on these assertions, and as a result suffered over $280,000 in damages.

Moreover, "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) (quoting Murphy v. Implicito, No. A-3172-03 (N.J. Super. Ct. App. Div. Sept. 22, 2005) (slip op. at 8-10)). In this matter, Plaintiff asserts that a contract existed between it and BTCI, but was personally guaranteed by Defendant. Plaintiff asserts that neither BTCI nor Defendant performed under the contract, thereby resulting in monetary damages to Plaintiff.

Insofar as Defendant's liability is alleged as that of an alter ego of BTCI, this Court must determine whether to "pierce the corporate veil" of BTCI and disregard the corporate framework to impose liability on an individual. In D.R. Horton, Inc. v. Dynastar Development, L.L.C., 2005 WL 1939778 (N.J. Super. Ct. Law Div. Aug. 10, 2005), a New Jersey court noted the state's two-part test for piercing a corporation's veil:

> First, the plaintiff must prove that the subsidiary was a mere instrumentality or alter ego of its owner. That is, that the parent or owner so dominated the subsidiary that it had no separate existence but "was merely a conduit for the parent."
>
> Second, the plaintiff must prove that the parent or owner has abused the business form to perpetrate a fraud, injustice, or otherwise circumvent the law. "Even in the presence of dominance and control, liability will be imposed only where the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law."

Id. at *27 (quoting State Dep't of Environ. Prot. v. Ventron Corp., 94 N.J. 473, 500-01, 468 A.2d 150 (1983)). Furthermore, the Third Circuit has fashioned a "Federal rule," which has been applied by judges in this District, for determining whether a corporation was functioning as an

5

alter ego.  See Avatar Business Connection, Inc. v. Uni-Marts, Inc., 2005 U.S. Dist. LEXIS 37506, at *34 (D.N.J. Dec. 29, 2005) ("[S]ome of the relevant factors for determining if a corporate entity is the alter ego of an individual or another entity is whether the corporation has non-functioning corporate officers or directors, the corporation fails to observe corporate formalities or, whether 'the corporation is merely a facade for the operations of the dominant shareholder or shareholders.'") (quoting U.S. v. Pisani, 646 F.2d 83, 88 (3d Cir. 1981)).  Plaintiff asserts that BTCI was an alter ego for Defendant, as Defendant would frequently personally guarantee BTCI's debts and take profits from BTCI.  Plaintiff further asserts that Defendant used BTCI in order to perpetuate a fraud or injustice.

Accepting these allegations as true, this Court finds that Plaintiff has set forth sufficient facts to constitute Defendant's liability for fraud and breach of contract.

B.  Emcasco factors

Before entering a default judgment, however, the Court must also consider three factors: (1) whether Plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct.  Carpenters Health & Welfare Fund v. Naglak Design, 1995 WL 20848, *2  (E.D. Pa. 1995) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987)).

Although these factors are typically more pertinent where the entry of default is contested, the factors clearly weigh in Plaintiff's favor in this instance.  Because Defendant has not filed an answer or otherwise shown cause why default should not be granted, the Court is "not in a position to judge whether the Defendant has a meritorious defense or whether any delay was the result of culpable misconduct."  Id.  Moreover, Defendant's failure to appear has deprived

Plaintiff of any other "means of vindicating [its] claim," and Plaintiff will be prejudiced if the default is not granted.  See Asher, 2006 WL 680533, *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default").  Rather, Plaintiff's damages continue to accrue during the pendency of this litigation.  Accordingly, Plaintiff is entitled to a default judgment.

    C.    <u>Damages</u>

In determining damages, the compensatory damages awarded for common law fraud would overlap with those damages awarded for breach of contract.  Essentially, Plaintiff is entitled to that amount of money owed it by BTCI and/or Defendant.

Plaintiff seeks $364,312.56, plus continuing interest of 1.5% per month, as damages.  Plaintiff attaches a declaration by Eric Alpert ("Alpert"), President of Plaintiff, attesting to these damages.  Alpert asserts that he reviewed copies and lists of checks issued by BTCI that did not clear, reviewed internal accounting records, and met with account managers.  He subsequently determined that Defendant owes an outstanding balance to Plaintiff of $234,284.61.  Alpert further states that Plaintiff has suffered $900.00 in bank fees.  Finally, Alpert claims that Plaintiff is entitled to $130,027.95 in late charges, assessed at 1.5% per month for 37 months, pursuant to Plaintiff's internal collection policies.  Alpert asserts that these were the damages suffered as of February 1, 2007.  Attached to Alpert's declaration are materials supporting his calculations.  Accordingly, this Court will award Plaintiff $364,312.56 in damages, plus continuing interest of 1.5% per month.

**IV.     CONCLUSION**

       Based on the foregoing reasoning, this Court will grant Plaintiff's motion for default judgment.  This Court will enter judgment in favor of Plaintiff and against Defendant in the amount of $364,312.56, plus continuing interest of 1.5% per month.  The accompanying Order shall issue today.


Dated: July 9, 2007                                                                        s/ Robert B. Kugler
                                                                                                                    ROBERT B. KUGLER
                                                                                                                    United States District Judge